ILLINOIS CENTRAL RAILROAD COMPANY *v.* MARIA DODD.

[61 South. 595.]                    ⠆ ⠆

CARRIERS.  *Contract of transportation.  Breach.  Excessive damages.*
˙ Where plaintiff went to see her relations at a point in this.
state intending to stay two weeks, but on account of the neg-·
ligence of the servants of the railroad she was compelled to⠆
remain a week longer, but her enforced detention was not un-·
pleasant, a verdict for more than fifty dollars was excessive..

APPEAL from the circuit court of Attala county.
HON. GEO. A. McLEAN, Judge.
Suit by Maria Dodd against the Illinois Central Rail-
road Company.  From a judgment for plaintiff, defend-
ant appeals.
The facts are fully stated in the opinion of the court.

*Mayes & Mayes,* for appellant.

When, under the facts of this case, a jury goes out·
and solemnly returns a verdict of two hundred and fifty
dollars, surely the limit ·of right has been passed.

In this case reported in 97 Miss. 865, this court said that
the facts presented no case for the infliction of punitive
damage.  This is the settled law of the case and we appre-
hend that when the court has read this record it will not
want to change its former ruling, because not a circum-

stance in the case indicates any purpose on the part of any employee to disregard the rigths of this old colored woman.

But appellee sought to evade the former decision of this court by asking and obtaining from the court instruction number two which tells the court that ''actual damages are not limited to money loss alone; they include delays, annoyances, inconveniences, etc.'' The giving of this instruction was wrong, and formed the basis of this extravagent verdict. That the company was liable for any necessary delay and loss is conceded, but the facts of the case utterly fail to show any annoyance or inconvenience beyond the mere fact of the eight days' delay.

She was in the house of the niece where she had gone on a rest and she continued there until she returned to Kosciusko. What annoyance was she subjected to beyond being delayed, or what additional inconvenience did she suffer? Instruction number two had told the jury that she could recover actual damage, and this court had said that this was all recoverable.

The facts utterly failed to show that she had suffered any such special inconvenience or annoyance as would warrant the court in specially instructing the court that she could recover on account thereof. The *Hobart case,* in 89 Miss. 252, has no pertinency to this controversy. The two cases are not analogous and the same rules of law do not apply. Counsel for appellee have attempted to use this case of *Hobart* v. *Telephone Company* to build up a case of damage wherein truth the rule does not apply, and where in addition, the facts of this case show nothing but nominal damages.

A verdict of not over ten dollars in this case, in our humble judgment, would have been all this old woman could have hoped for, and a verdict of two hundred and fifty dollars on the facts of this record works out a gross wrong. The court reversed the first case on a verdict of $175.

*Flowers, Alexander & Whitfield,* for appellee.

·This is a case with more honest merit in it than was in the case of *Christian* v. *Postal Telegraph Cable Company,* recently decided by this court in which a judgment for $750 was reuired to be paid. In that instance the telegraph company brought in what evidence it had to show that it did no wrong. The court held that the failure to explain warranted the imposition of punitive damages. It was held that the telegraph company must explain and pay. Here the railroad company refuses to offer any explanation. As far as this record shows the conductor may have intentionally and deliberately taken up the old woman's ticket and put it in his pocket. No one has explained why he did it and the proof is that he did take up the ticket wrongfully. And then the ticket was in the possession of the defendant when the old woman was asking the agent at Brookhaven for it and they did not produce it and give it to her and they do not offer any reason why they did not produce it and did not produce it and turn it over to her. See how much stronger are the facts of this case than were the facts in the Christian case. It is true the conductor did not swear at the old woman and that the agent did not use any profane language. Perhaps they both smiled. But certainly what these agents and servants of the appellant did is of more importance than what they said. They bowed and smiled and ignored absolutely the rights of the old woman. Perhaps she was too insignificant in appearance to impress herself upon their attention and to get them to recognize her grievance or her rights. If she made known her grievance and it was a just one and they ignored it, we think it makes little difference whether they smiled when they did it or swore.

In *M. J. & K. C. Railroad Co.* v. *Kranfield,* 92 Missl 494, the court permitted judgment to be rendered for seven hundred and fifty dollars, upon facts which did not not show half so flagrant a disregard of the rights of the

passenger as is shown in the instant case. Granfield was an experienced timberman and traveler. He got on a train which had been annulled because of a wreck a few miles away. It had been converted into a work train to relieve the wreck. He had bought his ticket. He got on the back end of the rear coach of the train and some one, he knew not who, swore at him in a soft voice so nobody heard it but him and told him he could not ride on that train. He got off, cashed his ticket and drove sixteen miles through the country on a beautiful afternoon. He was not humilitated; was not annoyed especially; did not suffer; lost nothing. Suppose in that case the train had not been annulled and Kranfield had the right to go on it and had his ticket and a trainman had smilingly caught Kranfield by the arm and smilingly held him off the train. In such case Kranfield's rights would have been violated to a much greater degree than they were actually as the thing happened. But there would have been no oath, no swearing. There would have been a flagrant violation of his rights perpetrated in absolute good humor.

In the instant case nobody cursed the old woman; nobody called her names; she was only ignored, disreregarded, left to work out her own salvation, and incidentally her own transportation back to Kosciusko.

In *Steinberger* v. *Western Union Telegraph Co.*, 97 Miss. 260, the court held that the failure to explain on the part of the company was sufficient to justify the award of punitive damages. It was held that the telegraph company must explain why it committed the wrong, or explain that it had done no wrong. In the instant case we prove the positive wrongful act and the defendant is not required to explain it nor to show the reason of the motive for its commission. And even after the attention of the company is called to it and ample time is given to correct it the defendant persisted in its wrongful conduct and refused to make amends. And it refuses yet to make any sort of explanation.

In the *Telephone Co.* v. *Hobart,* 89 Miss. 252, 261, wherein it appears that Hobart had declined to pay his telephone rent and the phone had been taken out and afterwards he offered the rent and the telephone company refused to put it back, the court said:

"When appellant declined to reinstate it after having been offered the rental of the telephone in the dwelling house, it was its duty to reinstate it, and not having done so, it should compensate Hobart for his pecuniary loss, and such inconvenience and annoyance in being wrongfully deprived of its use, as the jury thought proper under the facts. We do not say that damage for inconvenience and annoyance may be recovered in all cases, but from the very nature of the subject-matter of this litigation, annoyance and inconvenience is one of the main elements of damages. In the case of *Hewlett* v. *George,* 68 Miss. 703, 9 So. 885, 13 L. R. A. 682, this court held that 'compensatory damages are not necessarily limited to actual money losses.' Again, in the case of *Railway Co.* v. *Bloom,* 71 Miss. 247, 15 So. 72, the court held that damages for discomfort and inconvenience might properly be considered as compensatory damges.

"In the case of *Shepard* v. *Milwaukee Gas Light Co.,* 82 Am. Dec. 681, when the question as to damage was that of compensation merely, the court said: 'But it is said that the court erred in the rule of damages. It told the jury that the plaintiff, if entitled to a verdict, should have such damages as will compensate him for the pecuniary loss, and also for the inconvenience and annoyance experienced by him in his mercantile business arising out of the defendant's refusal to furnish gas to the plaintiff.' It is claimed that this instruction gave the plaintiff punitive or vindictive damages. But, we think, this is clearly not so. The inconvenience and annoyance occasioned directly by the wrongful act or refusal of the defendant are always legitimate items in estimating the damages in actions of this kind. Vindictive damages are

those which are given over and above all this as punish-
ment for the other party. In actions for a nuisance, the
damage usually consists almost entirely in inconvenience
and annoyance. So, also, in many other actions of tort.
In *Ives* v. *Humphreys,* 1 E. D. Smith (N. Y.), 201, the
court says: 'Even if the plaintiff be confined strictly to
compensation for the injuries sustained by him, the jury
are to determine the extent of the injury, insult, inva-
sion of the privacy, and interference of the comfort of
the plaintiff and his family.' And again, 'For an invol-
untary trespass, or a trespass committed under an hon-
est mistake, the damages shall be confined to compensa-
tion for the injury sustained by the plaintiff, and in esti-
mating the amount of such damages all of the particu-
lars wherein the plaintiff is aggrieved may be considered
whether pecuniary loss, or pain, or insult or inconven-
ience.' We quote this case with approval as applied to
this class of cases. When the telephone company under-
takes to cut out its subscribers for debts which it claims
to be due it, it may do so if the subscriber
actually owes it, but if the subscriber is not indebted to
it, it is liable for such actual damage, inconvenience and
annoyance as is occasioned him by its wrogful cutting out
his telephone.

The damage sustained by the loss of a telephone in its
very nature is largely composed of inconvenience and an-
noyance. That the person deprived of the use of a tele-
phone is materially damaged, all will concede. What is
the amount of damage in dollars and cents cannot be
accurately stated by the party suing for the reason that
his damage consists not only in pecuniary losses, but it
consists in inconvenience, discomfort and annoyance, and
it must be left to the jury to determine what is the dam-
age sustained, taking into consideration the discomfort,
the annoyance and inconvenience suffered, together with
actual pecuinary losses. Would it be contended if one's
gas was wrongfully cut off that compensatory damage

would be only what it would cost to buy tallow candles? To so hold, and to hold that annoyance, discomfort, and inconvenience was not a proper element of damage to be considered by a jury when the services of a telephone has been wrongfully discontinued, would be to place the public at the mercy of the telephone company, and force them to yield to many unjust demands rather than contest, for fear of a discontinuance of the service. Such coercive powers cannot be sanctioned.''

In the instant case the old woman was troubled and annoyed and inconvenienced by the failure on the part of the conductor to give her back her ticket and after she notified the defendant's agent of her trouble she was ignored. She made frequent trips to the station to see about it. She did not know how she was going to get back home. The agent of the company saw her and must have known how important to her a few dollars would be. He did nothing to correct the wrong. The company at that very time had her ticket and would not give it to her. She was old, ignorant and helpless. The agent saw her and knew her condition. The company persisted in keeping her ticket and thereby compelled her to resort to some means to raise the money to get back home.

Argued orally by *Robt. Mayes,* for apellant.

COOK, J., delivered the opinion of the court.

This is the second appeal of this case. When it was here before, it was reversed because the circuit court, in its instructions, authorized the jury to find punitive damges. The verdict then was for one hundred and seventy-five dollars. 97 Miss. 865, 53 South. 409. On the second trial, which is now here for review, the jury rendered a verdict assessing plaintiff's damages at two hundred and fifty dollars. On the second trial the court limited the jury to actual damages. The first jury thought that one hundred and seventy-five dollars would cover

all the actual and exemplary damages, while the second jury, excluding punitive damages, thought she was entitled to recover two hundred and fifty dollars for actual damages alone.

Appellee went to Brookhaven to spend two weeks with her relatives, but on account of the negligence of appellant's servants she was compelled to stay there one week more than she intended to stay. When she left Kosciusko, it is entirely probable that the limit of her visit was determined by the limit of her excursion ticket, and while she was ''bothered in her mind,'' because of the loss of her ticket, there is nothing in the evidence to suggest the idea that her enforced detention at Brookhaven was otherwise unpleasant, except it appears that she was forced to do sufficient labor to earn twenty-five cents. This, of course, was not altogether pleasant; but it cannot be said that she suffered enough from this enforced labor to entitle her to recover two hundred and fifty dollars.

The old woman did say that she sometimes cooked in Kosciusko, but how often and how long the record is silent. So we say, at best, the evidence shows that she earned twenty-five cents while in Brookhaven, and *might* have earned one dollar and fifty cents if the railroad company had been true to its trust, and she had been inclined, and if she had been offered the opportunity to cook at Kosciusko. Debiting the railroad company with one dollar and fifty cents, and crediting it with the twenty-five cents, the balance due in money lost is one dollar and twenty-five cents. Add to this the price of her ticket, four dollars, and forty-four dollars and seventy-five cents for worry and inconvenience (and not crediting the company with any pleasure she obtained from the lawsuit), we have fifty dollars, which we think is all she should have.

If all of the judgment is remitted, except fifty dollars, the case will be affirmed; otherwise, it will be reversed and remanded.

*Affirmed conditionally.*